IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ARLENE FRENCH )
 )
 v. ) NO. 3:13-0577
 )
OXYGEN PLUS CORP. and )
T. CISSY WHITE )

TO: Honorable William J. Haynes, Jr. Senior District Judge

# REPORT AND RECOMMENDATION

By Order entered October 28, 2014 (Docket Entry No. 38), the Court referred this action to the Magistrate Judge to address any motions or other pretrial matters.

Presently pending before the Court are the Defendants' Motion for Summary Judgment (Docket No. 23) and Motion to Dismiss (Docket Entry No. 24). Set out below is the recommendation for disposition of the motions.

## I. BACKGROUND

This lawsuit arises out of the Plaintiff's termination from employment with Defendant Oxygen Plus Corp. in November 2012. The Plaintiff contends her termination violated both federal and state law and seeks damages.

Oxygen Plus. Corp. ("OPC") is a health care business located in Manchester, Tennessee. T. Cissy White ("White") is the President, CEO, and sole owner of OPC.[1] The Plaintiff, Arlene French ("French"), began working for OPC as a respiratory therapist in April 2008, and worked as an hourly employee. During early 2012, the United States Department of Labor ("DOL")

---

[1] In her declaration, Defendant White states that her name is Theresa Millsopp, but that she is also known as Cissy White or T. Cissy White. See Docket Entry No. 23-3. The Court will refer to the Defendant as White.

investigated a complaint against OPC for failing to pay overtime to its workers. The Plaintiff did not testify or provide information as part of the DOL investigation, but she and other workers subsequently received payments from OPC for previously unpaid overtime.

The Plaintiff had a co-worker named Orneka Washington ("Washington") with whom she was also a close friend. In the aftermath of the DOL investigation, Washington believed that OPC was targeting her for mistreatment and reducing her work hours. Washington ultimately filed a lawsuit in this District against OPC and White on October 22, 2012, alleging that the Defendants retaliated against her for her participation in the DOL investigation in violation of the anti-retaliation provisions of the Fair Labor Standards Act, 29, U.S.C. § 215(a)(3).[2] Attached as exhibits to Washington's complaint ("the Washington Complaint") were copies of an e-mail dated August 27, 2012, from French to White, and a response e-mail later that day from White to French. In the two e-mails, French and White discussed work related issues concerning the sufficiency of staffing and the cleanliness of the OPC building and also discussed Washington being told to not come in on August 27, and White's displeasure with Washington's work attitude. See Docket Entry No. 1, at 14-15. The Plaintiff asserts that she provided Washington with copies of the e-mails.

The Plaintiff alleges that after the Defendants were served with the Washington Complaint, she was sent home early one day by OPC management employee Michelle Gowen ("Gowen") and told "Cissy does not pay you to sit around the office." She also alleges that her daily work logs were scrutinized more closely than had occurred before. The Plaintiff alleges that when she arrived for work on November 26, 2012, she was advised by Kristi Williams ("Williams"), her supervisor at OPC, that she was being terminated from employment because she had taken the company vehicle she drove for work duties to her home after work without authorization. The Plaintiff admits that she drove the vehicle in question home after the end of her workday on November 21, 2012, but denies that she did so without approval and asserts that she had requested and been given permission by Williams to keep the vehicle overnight. The Plaintiff asserts that it was not uncommon for her

---

[2] See Washington v. Oxygen Plus Corp. and T. Cissy White, 3:12-1084.

to keep the company vehicle overnight and that she had been granted permission to do so on several other prior occasions by both Williams and Gowen.

On June 14, 2013, the Plaintiff filed the instant lawsuit against OPC and White. She alleges a claim for unlawful discharge from employment in violation of the anti-retaliation provision of the Fair Labor Standards Act ("FLSA") which makes it unlawful to:

> discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). The Plaintiff contends that the two e-mails she provided to Ms. Washington that were attached to the Washington Complaint "made it obvious" to the Defendants that the Plaintiff would be a witness for Washington in her FLSA lawsuit against the Defendants and, thus, she is covered by the "is about to testify in any such proceeding" language of Section 215(a)(3). See Complaint (Docket Entry No. 1), at ¶¶ 49-55. In addition to her FLSA claim, the Plaintiff brings a claim for retaliatory discharge in violation of Tennessee common law, contending that she was terminated because of her close relationship with Washington and her good faith support of Washington's FLSA claim, id. at ¶¶ 56-64, and a claim that Defendant White tortiously interfered with her employment with OPC in violation of Tennessee statutory and common law. Id. at ¶¶ 65-77.

The Defendants have answered the Complaint, see Docket Entry No. 15, and the parties have engaged in pretrial activity pursuant to a case management order. See Docket Entry No. 17. The jury trial scheduled for November 18, 2014, was continued pending resolution of the Defendants' dispositive motions. See Order entered September 25, 2014 (Docket Entry No. 37). The Defendants' dispositive motions are the only motions currently pending.

## II. THE DEFENDANTS' MOTIONS

By their summary judgment motion, the Defendants move for dismissal on all three of the Plaintiff's claims. The Defendants argue that the mere fact that two e-mails between the Plaintiff

3

and White were attached as exhibits to Washington's Complaint is not sufficient to bring the Plaintiff within the scope of the FLSA's anti-retaliation provision and, in fact, did not indicate to White that the Plaintiff could be a witness in Washington's lawsuit. Defendant White asserts that it did not occur to her that the Plaintiff could be a witness in Washington's lawsuit until she was served with the Plaintiff's lawsuit on August 8, 2013, which was nearly a year after the Plaintiff was terminated from employment with OPC. The Defendants argue that the Plaintiff's common law retaliatory discharge claim is based solely upon the purported FLSA violation and, thus, fails for the same reasons as the FLSA claim fails. With respect to the Plaintiff's third claim, Defendant White acknowledges that interference with at-will employment such as the Plaintiff's employment with OPC can give rise to an actionable claim, but contends that Tennessee law requires that the interference must arise because of the actions of a third party. Defendant White argues that she cannot be deemed a third party and be liable for a claim for tortious interference with the at-will employment between her own company and the Plaintiff. In support of their motion, the Defendants rely upon excerpts from the Plaintiff's deposition (Docket Entry No. 23-1), Defendant White's responses to the Plaintiff's interrogatories (Docket Entry No. 23-2), and Defendant White's declaration (Docket Entry No. 23-3).[3]

The Plaintiff responds by contending that genuine issues of material fact exist that preclude the entry of summary judgment. The Plaintiff disputes that the two e-mails attached to the Washington Complaint were not enough to alert the Defendants that the Plaintiff would be testifying in Washington's lawsuit. The Plaintiff further asserts two other e-mails between herself and White on August 27, 2012, which were not attached to the Washington Complaint, also constitute protected activity and served as notice that the Plaintiff was going to be a witness for Washington. The Plaintiff contends that the Defendants' argument for summary judgment on the common law

---

[3] Although the Defendants failed to file a separate statement of undisputed facts as required by Local Rule 56.01(b), the Court granted the Defendants' motion to consider the motion for summary judgment, which included a statement of facts, as satisfying the local rule. See Order entered August 15, 2014 (Docket Entry No. 36).

retaliatory discharge claim simply mirrors its argument for summary judgment on the FLSA retaliation claim and is similarly deficient. With respect to the claim for tortious interference with a contract, the Plaintiff argues that Tennessee law permits a director or employee of a corporation who employed a plaintiff to be sued on such a claim if there is proof that the director or employee acted outside the scope of her authority, acted with malice, or acted to serve her own interests as opposed to the interests of the corporate employer.[4]

In conjunction with the motion for summary judgment, the Defendants also filed a motion to dismiss the Plaintiff's state claim for retaliatory discharge on the grounds that the claim is preempted and/or fails to state a claim. The Defendants contend that the state law claim is based solely upon the alleged violation of the anti-retaliatory provisions of the FLSA, a violation for which the FLSA itself provides the means for recovery.

In response, the Plaintiff contends that, as a matter of procedure, the motion to dismiss was not timely filed because it was filed after the Defendants filed their answer. The Plaintiff further argues that Sixth Circuit case law indicates that state law claims are not preempted merely because a plaintiff is also pursuing an FLSA claim. Finally, the Plaintiff asserts that, because she seeks punitive damages for her state law claim, a remedy that is not available under the FLSA, dismissal of her state law claim because of preemption would deprive her of such a remedy.

## III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265

---

[4] The Plaintiff also devotes part of her response to arguments concerning pretext on her FLSA claim, proof of a prima facie case of common law retaliatory discharge, and Defendant White's individual liability under the FLSA. See Plaintiff's Memorandum in Support (Docket Entry No. 28), at 10-13 and 19-20. However, the Defendants have not raised arguments for summary judgment based on these issues.

5

(1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). The party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. CONCLUSIONS

A. FLSA Retaliation Claim

The FLSA prohibits an employer from discharging or discriminating against an employee who has engaged in several types of specifically stated protected activities. An employee is protected from retribution if she "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). One of the threshold requirements for a plaintiff's pursuing a FLSA retaliation claim is to show that she engaged in protected activity under the FLSA. Adair v. Charter Cnty. of Wayne, 452 F.3d 482, 489 (6th Cir. 2006).

Of the protected activities set out in Section 215(a)(3), the only one at issue in this case is the activity of "about to testify in any such proceeding." Although the Plaintiff states in her Memorandum in Opposition that her e-mail to White on August 27, 2012, was "clearly" a "written complaint for herself and Washington" and constituted protected activity, see Docket Entry No. 28, at 6 and 9, the Court cannot find that the Plaintiff's retaliation claim is based upon the protected activity of filing a complaint. The allegations contained in the Plaintiff's pleading are that the Defendants retaliated against her based upon their belief that the Plaintiff would be a witness for Washington in her FLSA lawsuit and, thus, they violated the "is about to testify" protection of Section 215(a)(3). See Complaint (Docket Entry No. 1), at ¶¶ 52-53. The Plaintiff has not alleged that she suffered retaliation because she "filed any complaint." Id. Furthermore, even if the Plaintiff has properly alleged this claim, she has not set forth facts that would support a claim that she made a protected written complaint under the FLSA. The Court does not find that the e-mails referred to by the Plaintiff constitute a written complaint by her under the FLSA. Although an informal complaint may suffice as a protected complaint under Section 215(a)(3), see Moore v. Freeman, 355 F.3d 558, 562 (6th Cir. 2004), the content of the complaint "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of

7

rights protected by the [FLSA] and a call for their protection." Kasten v. Saint-Goban Performance Plastics Corp., _U.S._, 131 S.Ct. 1325, 1335, 179 L.Ed.2d 379 (2011); Russell v. Kloeckner Metals Corp., 2014 WL 1515527, *2 (M.D. Tenn. Apr. 18, 2014) (Campbell, J.). In the e-mails at issue, the Plaintiff does not complain about the violation of any FLSA rights or assert any statutory rights under the FLSA. Merely voicing complaints about work issues, even if those issues relate to work hours, does not itself amount to making a FLSA complaint. See Lasater v. Texas A & M Univ.-Commerce, 495 Fed.App'x 458, 461 (5th Cir. 2012); Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 626 (5th Cir. 2008); Lambert v. Ackerley, 180 F.3d 997, 1007 (9th Cir. 1999); Riffe v. Wal-Mart Stores, Inc., 2012 WL 204164, *7 (N.D. Ohio Jan. 24, 2012).

At various points in her filings, the Plaintiff asserts that she was retaliated against "for providing useful information" to Washington in the form of copies of the two e-mails at issue, see Complaint, at ¶ 53, and Plaintiff's Memorandum in Support (Docket Entry No. 26), at 2, or because she "provided assistance" to Washington by giving her these e-mails. See Plaintiff's Response (Docket Entry No. 27), at 1. The language of Section 215(a)(3) does not include "providing" information or assistance as one of the specified protected activities upon which a FLSA retaliation claim can be based. The Plaintiff has not offered any case law supporting a construction of Section 215(a)(3) that includes "providing" information or assistance as a protected activity, generally, or as activity that is encompassed within the phrase "is about to testify." Accordingly, to the extent that the Plaintiff attempts to base her retaliation claim upon an argument that she "provided" assistance or information to Washington, the Court finds no legal basis within Section 215(a)(3) for such a claim.

Turning now to the protected activity of "is about to testify," it is important to note that a claim based on the "is about to testify in any such proceeding" language of Section 215(a)(3) must be based upon a plaintiff's anticipated testimony in an actual and pending proceeding as opposed to an impending or anticipated proceeding. Ball v. Memphis Bar-B-Q Co., 228 F.3d 360, 364-65 (4th Cir. 2000). The Plaintiff appears to argue that her retaliation claim is based not only upon the fact

that Ms. Washington attached the two e-mails the Plaintiff exchanged with White on August 27, 2012, as exhibits to the Washington Complaint, but also upon the mere exchange of these and other e-mails with White in August 2012. See Plaintiff's Memorandum (Docket Entry No. 28), at 8-9, and Complaint, at ¶ 52 and pp. 16-17. However, the exchange of e-mails between the Plaintiff and White in August 2012, or for that matter at any time prior to Ms. Washington's actual filing of her complaint on October 22, 2012, cannot be the basis for a retaliation claim because Ms. Washington's FLSA proceeding had not yet commenced at the time of the e-mails. See Ball, 228 F.3d at 364 (the language of the testimony clause of the FLSA's anti-retaliation provision does not apply to intra-company complaints or to potential testimony in a future-but-not-yet-filed court proceeding). Until Ms. Washington's FLSA lawsuit was filed on October 22, 2012, there was no proceeding in which the Plaintiff was "about to testify." Ball, supra. See also Sexton v. Panel Processing, Inc., 754 F.3d 332, 335 (6th Cir. 2014) (plaintiff's unsolicited e-mail about ERISA violations did not constitute "giving information" in an "inquiry or proceeding related to [ERISA]" for the purposes of ERISA's anti-retaliation provision when there was no inquiry or proceeding pending at the time of the e-mail).

Further, the Plaintiff's subjective belief that she might eventually act as a witness in future litigation by Washington because of her relationship with Washington does not bring the Plaintiff's exchange of e-mails with White or her act of providing those e-mails to Washington within the protection of Section 215(a)(3). Neither the Plaintiff's familiarity with the situation at OPC nor her relationship with Washington is sufficient to render her "about to testify in any such proceeding." See Elsensohn v. St. Tammany Parish Sheriff's Office, 530 F.3d 368, 373-74 (5th Cir. 2008) (interpreting Family Medical Leave Act's "about to testify" provision).

The crux issue in this case is whether the Plaintiff is covered by the "about to testify" provision of Section 215(a)(3) based upon the undisputed fact that copies of the two e-mails she and White exchanged on August 27, 2012, were attached to the Washington Complaint. The Plaintiff argues that the attachment of the two e-mails to the Washington Complaint would have alerted any

9

reasonable person in the Defendants' position that the Plaintiff was a potential witness for Washington in her lawsuit. On the other hand, the Defendants argue that White subjectively did not view the attachment of the two e-mails to the Washington Complaint as indicating that the Plaintiff would be a witness for Ms. Washington in her lawsuit and there is no evidence supporting a conclusion that White should have reasonably inferred that the Plaintiff would be a witness for Washington in her lawsuit.

Neither party has provided the Court with any case law that is directly on point with the specific and uncommon factual scenario before the Court. However, the use of the language "about to testify" in Section 215(a)(3) clearly indicates that the protection against retaliation is extended not only to those who actually testify, but also to those whose testimony is impending or anticipated. See Ball, 228 F.3d at 365 ("it is enough that the testimony be impending or anticipated"); Hinsdale v. City of Liberal, Kan., 19 Fed.App'x 749, 756 (10th Cir. 2001) (plaintiff engaged in protected activity under Section 215(a)(3) when he decided to testify in FLSA lawsuit). An individual who is issued a witness subpoena, is listed as an anticipated or potential witness in discovery or pretrial filings, or who has provided or is scheduled to provide deposition testimony would clearly fall within the protection of Section 215(a)(3). Additionally, a person who has provided an affidavit or a sworn statement that is submitted in support of a complaint has engaged in testimonial activity related to an FLSA proceeding and, thus, would also fall within the scope of Section 215(a)(3). Each of these activities is an example of a clear indication that an individual is about to testify, whether by choice or otherwise, or an example of active conduct on the part of an individual that objectively suggests an individual's intent to testify in a proceeding. In each situation, the individual can be said to be on the verge of testifying.

There may be other conduct in which an individual supports a plaintiff who brings an FLSA proceeding, provides information or assistance to such a plaintiff, or has knowledge of information concerning activity that may be at the heart of a FLSA proceeding. However, in none of these situations can the individuals be said to be "on the verge" of testifying, even if it is plausible that the

individual could be called upon to testify in such a FLSA proceeding and even if the individual subjectively believed that she would testify. See E.E.O.C. v. Swift Transp. Co., 120 F. Supp. 2d 982, 993 (D. Kan. 2000); Elsensohn, 530 F.3d at 373. See also Hinsdale, 19 Fed.App'x at 756 (husband of FLSA plaintiff engaged in protected activity when he decided, nearly one year after the suit was filed, to testify on his wife's behalf). Section 215(a)(3) does not include "assist," "participate," or "has given information" within the scope of protected activity under the FLSA and use of the words "about to" and "testify" in Section 215(a)(3) cannot be overlooked. See Sexton, 754 F.3d at 335 ("All matters of interpretation begin with text; some end there."). This language requires both a specific activity, i.e., testimonial activity, and that this activity be objectively impending or anticipated, i.e., "about to." See Ball, 228 F.3d at 365. Even if the Court presumes as true that the two e-mails at issue were provided to Washington by the Plaintiff and further presumes as true that both the Plaintiff and Washington believed that the Plaintiff would testify in the Washington lawsuit should the need arise, the mere fact that the e-mails were attached to the Washington Complaint is not sufficient to deem the Plaintiff "about to testify" in Washington's FLSA lawsuit. The e-mails themselves are not testimony, nor do they objectively indicate impending or anticipated testimonial activity on the party of the Plaintiff. While use of the e-mails as exhibits to the Washington Complaint may have suggested that the Plaintiff was supportive of Washington's lawsuit, they do not show that she was "about to testify" in that lawsuit. Summary judgment should be granted to the Defendants on the FLSA claim.

B. Common Law Retaliatory Discharge Claim

As an initial matter, the Court is not persuaded by the Plaintiff's technical argument that the Defendant's motion to dismiss should be denied because it was not timely filed. It is not clear to the Court why the Defendants chose to file a separate motion to dismiss in conjunction with their motion for summary judgment when both motions raise arguments for dismissal of the Plaintiff's common law retaliatory discharge claim. Regardless, the arguments set out in the motion to dismiss could

11

have been included in the pending motion for summary judgment instead of being parsed out in a separate motion. Thus, the Court shall view the arguments raised in the motion to dismiss as if they were raised in the motion for summary judgment and shall consider those argument on their merits.

The Tennessee common law cause of action for retaliatory discharge developed as an exception to the at-will employment doctrine and restricts the right of an employer to terminate an employee "when the employee is terminated in contravention of well-defined and established public policy." Guy v. Mutual of Omaha Ins. Co., 79 S.W.3d 528, 535 (Tenn. 2002) (citing Chism v. Mid-South Milling Co., 762 S.W.2d 552, 555 (Tenn. 1998)). The elements of such a retaliatory discharge claim are (1) an at-will employment relationship; (2) the discharge of the employee; (3) that the employee was discharged for attempting to exercise a constitutional or statutory right or for a reason that violates a clear public policy; and (4) that the employee's action was a substantial factor in the decision to discharge the employee. Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822, 825 (Tenn. 1994); Collins v. AmSouth Bank, 241 S.W.3d 879, 884 (Tenn.Ct.App. 2007).

The question of whether the FLSA preempts state law causes of actions has not been answered by the Sixth Circuit and there is not a uniform answer among the other courts of appeals that have addressed the issue. See Taylor v. Trojan Labor of Nashville, LLC, 2013 WL 1826450, *1 (M.D. Tenn. Apr. 30, 2013) (Sharp, J.); Crouch v. Guardian Angel Nursing, Inc., 2009 WL 3738095, *5 (M.D. Tenn. Nov. 4, 2009) (Wiseman, J.). The Defendants rely upon Anderson v. Sara Lee Corp., 508 F.3d 181, 183 (4th Cir. 2007), for the proposition that the FLSA enforcement scheme preempts various types of state law claims. However, the Plaintiff points out that there is case law holding that a plaintiff is not preempted from pursuing state law claims even though those claims are based upon some of the same events or facts that support a claim brought directly under the FLSA. See Memorandum in Support (Docket Entry No. 26), at 5-9

The Court does not view Anderson as controlling in this matter, but also does not view the cases upon which the Plaintiff relies as controlling. Neither Anderson nor the cases cited by the Plaintiff are directly on point because they involve a variety of different state law causes of action

and do not involve a common law retaliatory discharge claim similar to the one set out by the Plaintiff. The entire realm of state law claims that may or may not be preempted by the FLSA is not at issue in this action. The issue is much narrower and involves only a state law claim that is based upon an alleged violation of public policy. The Plaintiff has not set forth any public policy arising from Tennessee law supporting her claim, and the asserted public policy at issue is the FLSA's anti-retaliation provision contained in Section 215(a)(3). Accordingly, the Plaintiff's common law retaliatory discharge claim is not supported by a state law policy basis that is independent of the FLSA claim and, it essentially mirrors the FLSA retaliation claim, which makes unlawful conduct for which the FLSA has provided a remedy. Thus, the Court finds that the common law retaliatory discharge claim brought by the Plaintiff is preempted by the FLSA given that the claim is based solely upon a purported violation of the FLSA's anti-retaliation provision, which is itself asserted as an independent claim under the FLSA. See Shakib v. Back Bay Rest. Grp., Inc., 2011 WL 4594654, *8 (D. N.J. Sept. 30, 2011); Prewitt v. Factory Motor Parts, Inc., 747 F.Supp. 560 (W.D. Mo. 1990). See also McAllister v. Quality Mobile X-Ray Servs., Inc., 2012 WL 3042972, *4 (M.D. Tenn. July 25, 2012) (Trauger, J.) (finding that a Tennessee common law retaliatory discharge claim was preempted under Family Medical Leave Act ("FMLA") when the plaintiff's state law claim was based upon violations of the FMLA and she asserted a retaliation claim directly under the FMLA).

The Court is not persuaded by the Plaintiff's argument that her common law retaliatory discharge claim should be permitted to proceed because punitive damages, which she seeks as a remedy for her state law claim, are not available under the FLSA. See McAllister, supra; Conus v. Watson's of Kansas City, Inc., 2011 WL 4348315, *4 (D. Kan. Sept. 16, 2011). Summary judgment should be granted to the Defendants on the state retaliatory discharge claim based upon preemption. Additionally, even if not preempted, because the Plaintiff's common law retaliatory discharge claim is essentially duplicative of her FLSA retaliation claim, the state law claim likewise warrants dismissal on its merits. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1399 (10th Cir. 1997).

13

C. Tortious Interference With A Contract Claim

It is undisputed that the Plaintiff was employed by OPC as an at-will employee who had no contractual right to continued employment with OPC. Accordingly, she cannot, and has not, pursued a breach of employment contract claim against OPC or White. Cantrell v. Knox Cnty. Bd. of Educ., 53 S.W.3d 659, 662 (Tenn. 2001); Forrester v. Stockstill, 869 S.W.2d 328, 330 (Tenn. 1994). Despite the lack of any contractually enforceable employment contract with OPC, the Plaintiff nonetheless asserts a claim against White under Tennessee statutory and common law based upon the theory that White tortiously induced the breach of, or interfered with, her at-will employment with OPC.

To the extent that the Plaintiff asserts this claim as one for tortious inducement or procurement of a breach of contract by White under either the common law or Tenn. Code. Ann. § 47-50-109, see Complaint, at ¶ 74, summary judgment should be granted to Defendant White on such a claim. Tennessee law provides for both a statutory action, see Tenn. Code. Ann. § 47–50–109 (1995),[5] and a common law action for tortious inducement to breach a contract. Edwards v. Travelers Ins. of Hartford, Conn., 563 F.2d 105, 120 (6th Cir. 1977); Polk & Sullivan, Inc. v. United Cities Gas Co., 783 S.W.2d 538, 542 (Tenn. 1989). The statute is merely a codification of the common law cause of action, except as to the damages that may be recovered against a wrongdoer. See Edwards, 563 F.2d at 119-20; Myers v. Pickering Firm, Inc., 959 S.W.2d 152, 158 (Tenn.Ct.App. 1997).[6] Under either avenue of recovery, it is necessary for the Plaintiff to show that

---

[5]Tenn. Code. Ann. § 47–50–109 provides that:

It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

[6] Although it is not clear whether Plaintiff is seeking to assert a common law claim in addition to the statutory claim, which she specifically pleads, the same analysis applies to both claims.

there was a breach of an enforceable contract. Because at-will employment does not create an enforceable contract right under Tennessee law, a former at-will employee does not have a cognizable action for tortious inducement or procurement of the breach of contract based upon her termination from employment. See Wooley v. Madison Cnty., Tennessee, 209 F. Supp. 2d 836, 849 (W.D. Tenn. 2002); Forrester, supra; Federated Rural Elec. Ins. Exch. v. Hill, 2007 WL 907717, *13 (Tenn. Ct. App. Mar. 26, 2007); Smith v. Harriman Util. Bd., 26 S.W.3d 879, 886 (Tenn. Ct. App. 2000).

Although it is a subtle distinction, even though a claim for tortious inducement or procurement of a breach of contract is not viable if there is not an enforceable employment contract, a claim does exist under Tennessee common law based upon a theory of intentional interference by a third party with an employee's at-will employment. Forrester, 869 S.W.2d 330-31; Leemis v. Russell, 2000 WL 705772, *3 n.3 (Tenn. Ct. App. May 24, 2000) ("Although both of these legal theories may be applicable to a single set of facts, the tort of intentional interference with employment relations is a separate and distinct cause of action from the tort of inducement or procurement of a breach of contract.").[7] Because an employee has an interest in her employment relationship even if it is at-will employment, a third party who intentionally interferes with the at-will employment of an employee may be liable in tort. Forrester, supra; Thompson v. Memphis Light, Gas & Water, 416 S.W.3d 402, 413 (Tenn. Ct. App. 2011). The common scenario for this claim is when a terminated employee alleges that a party who stood outside the employment relationship between the employee and her former employer took actions that interfered with the employment

---

[7] The Court recognizes that there is language in some cases indicating that an action can be maintained for procurement of breach of a contract in situations involving at-will employment, see New Life Corp. of Am., v. Thomas Nelson, Inc., 932 S.W.2d 921, 926-27 (Tenn.App. 1996); Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Distrib. Co., 1986 WL 622, *5 (Tenn. Ct. App. Jan. 2, 1986), and that some courts have used the phrases "interference with a contract" and "inducement or procurement of a breach of contract" interchangeably. See Feathers v. Willamette Indus., Inc., 162 Fed.App'x 561, 567-68 (6th Cir. 2006). However, the Court finds the distinction in the claims recognized by the Tennessee Supreme Court in Forrester to be a correct statement of the law. See also Chilton Air Cooled Engines, Inc. v. Omark Indus., Inc., 721 F. Supp. 151 (M.D. Tenn. 1988) (noting distinction between claims of "tortious interference" and "tortious inducement").

relationship and caused the employer to terminate the employee. The less common situation – and the one raised by the Plaintiff – is when the terminated employee brings the claim not against a clearly recognizable third party, but against a supervisor, director, or employee of her former employer.

In order to pursue her claim against Defendant White, the Plaintiff must show that White "stood as [a] third part[y] to the employment relationship at the time [she] performed the acts found to have caused [the Plaintiff's] discharge." Forrester, 869 S.W.2d at 331. It is undisputed that White was the President, CEO, and 100% owner of OPC. Given that White was the 100% owner of OPC, there is an identity of interest between OPC and White such that White did not act as a third party when she acted on behalf of OPC. See Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 790 (Tenn. 2006) (recognizing complete identity of interest between parent corporation and wholly owned subsidiary). The Plaintiff's arguments that White should be deemed a third party to the employment relationship between OPC, the company which she solely owned and actively managed, and the Plaintiff are unpersuasive. A corporate officer or director who is closely related to the corporate defendant and acts within the scope of her duties is simply not a third party to the employment relationship. See Nelson v. Martin, 958 S.W.2d 643, 647 (Tenn. 1997), overruled on other grounds by Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691 (Tenn. 2002); Thompson, 416 S.W.3d at 413-14; Rennell v. Through the Green, Inc., 2008 WL 695874, *8 (Tenn. Ct. App. Mar. 14, 2008). See also Waste Conversion Sys., Inc. v. Greenstone Indus., Inc., 33 S.W.3d 779, 782 (Tenn. 2000) ("Forrester also shows that the claim can be alleged successfully only when the interfering party is a third party not closely tied to the operations of the breaching corporation."). A decision to terminate an employee is clearly an action within the scope of White's duties.

The Plaintiff's mere assertions that White acted maliciously or in her own interest, as opposed to the interest of OPC, are insufficient to render White a third party. See Memphis, 416 S.W.3d at 414 ("Assuming the truth of [the plaintiff's] allegation that his continued employment would have benefitted [his employer] and the termination of his employment was not in the best

interest of [his employer], this shows only that [the defendant's] actions were misguided or, at worst, spiteful and jealous. It does not show that [the defendant] stood as a third party to the employment relationship or that [the defendant] stood to benefit personally from the termination of [the plaintiff's] employment.").

Under the facts of the instant action, the Plaintiff has simply not set forth evidence showing that White, who was not merely a corporate employee of OPC but was the 100% owner, the President, and the CEO, acted as a third party for the purposes of the Plaintiff's state law claim. Genuine issues of material fact do not exist on this issue, and summary judgment should be granted to Defendant White on this claim.

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that the Defendants' Motion for Summary Judgment (Docket No. 23) and Motion to Dismiss (Docket Entry No. 24) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge